Manuel González Martínez, Plaintiff and Appellee, *v.*
Carmela Marvel, Defendant and Appellant.

No. 8055. Argued January 24, 1940.—Decided April 4, 1940.

Mr. Justice Hutchison delivered the opinion of the court.

Carmela Marvel was and is the owner of a small house built on a bit of land bounded on three sides by a larger tract of which it was and is a part, and on the other by the highway between Guayama and Salinas. She appeals from a judgment of eviction rendered in a proceeding for unlawful detainer.

Plaintiff was the owner of the land. He alleged: that without his authorization and by his mere tolerance, defendant was occupying the land on which her house stood; that defendant paid no rent and was a tenant at will.

Defendant denied the averment as to possession without authorization and—as owner of the house acquired by purchase in April 1928, from Antonio Rivera, who had built the same with his own money and had been in the quiet, public and peaceful possession thereof as owner for more than 15 years—asserted in her answer an express authorization by the owner and a right of usufruct in the land on which her house stood. She denied that her possession was by mere sufferance of the owner or that she was a tenant at will; and reasserted her claim of usufruct and possession by express authorization from the owner of the land, and her possession of the house as the owner thereof.

Witnesses for plaintiff testified that defendant was the owner of the house where she lived and that she paid no rent. One of these witnesses testified that defendant had lived there some fourteen years and before that the house had belonged to a road overseer. The only witness for plaintiff who was asked whether plaintiff had authorized the construction of the house did not know whether it had been built with or without plaintiff's permission.

Witnesses for the defense testified in part as follows:

José María Angelí:

Identified a document dated April 24, 1928, whereby for a consideration of $77.00 Carmela Marvel acquired by purchase from Antonio Rivera a zinc roofed frame house. Antonio Rivera was a road overseer. He worked for the government. The document was written by a son of witness and signed in the presence of witness and of Manuel Torres, who also signed in the presence of witness. The house was on the property of Don Manuel González. The money was paid in one-dollar bills in the presence of witness.

The sale was of the house only. Don Manuel was not present.

Witness knew the house. The road overseer lived in it. Witness did not know who built it nor when it was built. Rivera told witness that it was his house on land belonging to Don Manuel González. Witness had known the house for ten or twelve years, first, because the overseer lived in it and later because of the sale and because witness often passed the place.

Carmela Marvel lived in the house with her husband and her chlidren. She had lived there always since the time of her purchase. The road overseer had—as far as witness had observed—lived in the house for two years or more before the sale. He might have lived there for a longer period. Carmela Marvel had enlarged the house after her purchase. It was a small house when she bought it. At the time of the trial it was pretty commodious (*bastante cómoda*) and had electric lighting. Had a balcony.

Eugenia Rodríguez:

Antonio Rivera was her husband. They were not married. They had lived on land belonging to Don Manuel González. When witness went to live with Antonio Rivera he had a small thatched

house. He had lived there for years with Gabriela Paduani. When witness went to live with him, he had left Gabriela. He told witness that he had lived in the little house with Gabriela eight years. Antonio Rivera and Gabriela had built the little thatched house. It was burnt. With the aid of Mr. Carpenter, manager of Aguirre, they had built a new one—the one which they later sold to Doña Carmela. The new house was of zinc and of wood. Witness and her husband lived six years in the new house; from 1922 to 1928. During that time Rivera was not disturbed in his possession of the house. He was a road overseer employed by the Government of Puerto Rico on public works. Don Manuel González never came to them nor interrupted them in their possession of the house. They sold the house to Carmela Marvel for $77.00. With the money they bought another house in Borinquen, municipality of Salinas. Antonio Rivera died in the year of San Felipe, 1928, after selling the house. Carmela had lived in the house from the date of her purchase.

(On cross examination):

They built the new house on the same site. They knew that the land belonged to Don Manuel. Rivera built with his permission. Rivera was a road overseer and Don Manuel had "conceded" the site. Witness knew that Don Manuel had given Rivera permission because Rivera had told witness. Witness knew that the land did not belong to them. They had lived some three years in the new house. They had built it in 1925, more or less immediately after the other was burnt. Rivera said that Don Manuel had given him permission from the time of the first house.. Witness did not know whether Rivera had asked Don Manuel for permission to build the new house. There was no interference with the building; no interruption. Benigno Patiño was the *mayordomo*. He lived in Besosa nearby, and passed the place at times. They had built the new house and Don Manuel had not even come near them.

(On re-direct:)

Don Manuel had aided in the reconstruction of the house "only by his former permission to Rivera as to the lot". He did not forbid the road overseer to build since he had already given his permission for the first house. He did not "intervene" in the building of the second. They did not ask and he did not give permission because he had previously given permission for the building of the first house.

## Agustín de Jesús:

Was a special agent of the Department of Labor and a Representative in the House for the District of Salinas and Guayama. He had known Carmela Marvel for eighteen years. He had known Antonio Rivera who was a road overseer in charge of a certain section of highway number 3—from Besosa to a point near the Coquí school house, partly in Guayama and partly in Salinas. Rivera had a thatched house on the road side said to be on the property of Manuel González; witness did not know. The house was there in 1917. It was destroyed by fire in 1922. Rivera was at the time a member of the agricultural union in Aguirre, and requested cooperation in the building of the new frame house which, with such cooperation, he built. Carmela Marvel purchased the new house from Rivera. Carmela Marvel, from the date of her purchase to the time of the trial, had not been disturbed in her possession. She had repaired it, added to it and had built a balcony. At the time of the trial it was worth $400 more or less. Rivera had never been an employee of González nor a share-cropper. He had always worked with the Insular Government as a road overseer. With Juan García, a supervisor in charge of the district, he had asked permission to build the thatched house, and Manuel González had given permission.

### (On cross examination):

Prior to the time of the unlawful detainer proceeding, Don Manuel had never made any demand upon Carmela Marvel for possession. Witness often visited the house and the people of the neighborhood reported to him all their problems. It was Juan García, in charge of the district, who spoke to Don Manuel in 1922.

## Carmela Marvel:

Had known Don Manuel González twenty years. She had purchased the house from Antonio Rivera for $77. She had lived in the house for more than ten years, from the date of her purchase. The document was signed in José María Angelí's store. He counted the money. Witness knew at the time that the land belonged to Don Manuel González. The house belonged to Antonio Rivera, the road overseer. He was living in it at the time of the purchase. Witness knew that he had lived in the house for four years before that. Previously he had owned a thatched house. Witness had often passed the place. Witness had never been disturbed in her possession up to the time of the unlawful detainer proceeding. Witness had added

to the house. No one had interfered with the work. Don Manuel was passing by nearly every week and said nothing. Witness had not asked permission to make repairs. Before purchasing the house, ·witness had asked permission of Don Manuel, had asked him whether she might buy it. He told her that she might and advised her to demand "good papers" in order to avoid future claims. Witness understood that by "good papers" he meant that she should demand a deed when she purchased the house.

(On cross examination):

Witness asked permission to purchase the house because Rivera had told her that the house was on Don Manuel's land and that she must first have a talk with him. Then witness went and talked to him, and he said: "Buy it and ask for good papers." Witness knew that the land did not belong to her. When witness asked Don Manuel's permission to purchase the house, Pepe García was present, but he did not wish to say anything.

No witnesses were called in rebuttal. The uncontradicted testimony of witnesses for the defense established facts sufficient to bring the instant case within the doctrine of *Ermita de Nuestra Señora del Rosario* v. *Collazo*, 41 P.R.R. 594, and *Rivera* v. *Santiago, ante*, 361.

The judgment appealed from must be reversed and the unlawful detainer proceeding shall be dismissed.

Mr. Justice Wolf concurs in the reversal on the ground that the judgment of the lower court failed to make any provision in favor of the defendant or for determining the present value of the house, all of which pursuant to section 18 of the unlawful detainer act.